Good morning, Your Honors. Jason Carr appearing on behalf of Mr. Rowell. I intend to reserve a minute of my time for rebuttal. All right. This case, there's a lot of interesting aspects to this case in what is a relatively simple factual scenario. One of the major legal issues for this Court to grapple with is exactly what was adjudicated on the merits by the Nevada Supreme Court and how does the Nevada Supreme Court opinion factor into the 2254 D. 1, 2, and even E. 1, to a lesser extent, standard. And the operative Nevada Supreme Court opinion is in the first volume, and it's right there on page 1 through 3 of the excerpts of record. And why do I say that it matters what the Nevada Supreme Court adjudicated? Under the 2254 D. standard, what the Court is to look at in Federal habeas is the adjudication on the merits. That's under the plain language of the statute. But case law, the U.S. Supreme Court and this Court's case law has told us that what has been adjudicated on the merits is also implied. And I would submit that in this case, what the Nevada Supreme Court adjudicated encompasses both a knowing and voluntary plea issue that is a subsidiary consideration of this Court to the primary issue. And that was a very confusing thing that I said. But one of the major — the State's major arguments in this case is that this Court can't consider that the Nevada Supreme Court's decision violated my client's constitutional right to both the benefit of his plea bargain and a knowing and voluntary plea requirement, that the Nevada Supreme Court's decision can't be analyzed under those terms because my client does not have that habeas claim left. But the habeas claim that is not — that may or may not be left is a Fourth Amendment claim, and the Nevada Supreme Court didn't say anything on the merits of the Fourth Amendment claim. To look at the merits, we need to look back to what the trial court did, right, at the suppression hearing. That's exactly — and it's a great question, because that's exactly my point, though. The 2254D error — and there's a D2 error here, too, because the Nevada Supreme Court's opinion is clearly erroneous as a matter of fact. I don't think we — But putting that aside, I'm sorry to answer your question. I just think when we're figuring out whether there was anything that violated clearly established law here, don't we need to look at what the trial court did in that suppression ruling? Yes. I don't think we need to talk about what the Nevada Supreme Court did. Well, that's a good point. And actually, what the trial court did is — the State trial court is very important, and you can find — It had an evidentiary hearing, right? There was an evidentiary hearing on the motion to suppress, but I would argue that the pivotal aspect of the State court record is the change of plea canvas. And that appears in various parts of the record, but you can see a pertinent excerpt of it on pages 58 through 60 of the excerpt of the record, which is the district court. Why is that critical? Well, how is that critical over the fact that he had an opportunity, which the law is pretty clear that if he had an opportunity to litigate this Fourth Amendment claim, how do — I'm trying to figure out which of the — Oh, our very claim is that he did not. I'm sorry? The very essence of our claim is he did not have a full and fair opportunity to litigate. I'm having a little trouble understanding why he didn't. The simple argument is that the full and fair opportunity includes both a meaningful opportunity to present the facts in district court and the right to an appeal of that decision. So our first predicate legal stance here is that under Stone v. Powell, for it to be a full and fair adjudication, that includes the direct appeal process, and that the defendant cannot be unfairly deprived of that process. And why — or how was he not able to appeal it? Because it — this is where the case gets weird a little bit. Okay. And this is what makes the case unusual, is that the judge here kind of went astray and basically negotiated a plea with the defendant. And he said, look, if you plead guilty, you're going to get three things. I still don't understand why he couldn't appeal. Because, well, one of the things that the judge promised my client was you will get to appeal your Fourth Amendment issue. And, in fact, the defendant — my client during the change of plea stops him and clarifies that again. I'm going to get to appeal this Fourth Amendment issue, right? And the judge says, yes, that is what — if you plead guilty, you will get to appeal that. But when he goes up on appeal, he briefs the issue in his fast-track statement to Nevada Supreme Court. The Nevada Supreme Court kicks it back based on a defect in the following Nevada statute that it has to be in writing. Right. So could I ask you about the Fourth Amendment claim? So if we accept your arguments that we should reach the Fourth Amendment claim because he didn't actually have a waiver of his right to appeal here, then why do you win this Fourth Amendment claim? Oh, that's an interesting question. Before — I'm going to answer that. But before we get there, we have to ask ourselves the question, what is the remedy? Because the remedy — it's not clear that the remedy here is that I get a Federal Court adjudication of the Fourth Amendment claim. Because what is — he was deprived here, my client, and the Stone v. Powell law is somewhat uncertain on this, I would submit. But the remedy could be that the writ should be in Nevada Supreme Court. You have to give him his appeal. So let me — Not that the Nevada — not the Federal Court. What's your best support for that? Because as you say, we don't get that from Stone v. Powell. Well, I would argue in Stone v. Powell, if you read it, they talk about how that it doesn't serve the purposes of the exclusionary rule. When I say they, I mean the U.S. Supreme Court. They do not talk about the purpose — all the purposes of the exclusionary rule are so attenuated in post-conviction that Federal courts should not be involved in adjudicating the Fourth Amendment claim because we don't want to apply the exclusionary rule at that stage of the proceeding. And that — and also, the other consideration is that we're back to comedy. I mean, the Nevada Supreme Court should have the first opportunity to decide this Fourth Amendment issue. So the remedy I'm asking for — But the Nevada court's already — I mean, so I saw that in your reply brief, but it made no sense to me because your — That's unfortunate. Your habeas petition had a claim, a Fourth Amendment claim, and Stone v. Powell says we can't address that if you had a full and fair opportunity to litigate. So you're saying you didn't have a full and fair opportunity to litigate. So if we accept that, it seems to me what we're supposed to do is look at your Fourth Amendment claim. What I'm asking for is to rectify the full and fair opportunity. This is — But that's not the claim in your habeas petition. The claim in your habeas petition is a Fourth Amendment claim. You say your client's Fourth Amendment rights were violated, not that he had some procedural right that was violated. Look, here's an analogy I would draw. If you have a claim in your habeas petition that you're unfairly denied your right to appeal to the Nevada Supreme Court, it's called a Flores-Ortega claim, the remedy — if you prove up that claim, the remedy is not that the Federal District Court reviews your issues on appeal, that you would erase the Nevada Supreme Court. The remedy is the Nevada Supreme Court is directed to give you your appeal. And here, what I'm talking — Wait, wait, wait. You're talking about on Federal habeas? Right. That's the remedy. And what case are you — what case are you talking about that stands for that? That's the Flores-Ortega remedy. And that was the analogous situation. Because what I'm arguing here is my client was deprived of a procedural right. So if that's what you were claiming, then why didn't your habeas petition say that? The habeas petition says we have a Fourth Amendment claim. Well, the remedy could have been better articulated in the claim. But the fundamental claim is that he was not given his full and fair opportunity to litigate this Fourth Amendment claim. I would argue that — Okay. So even if we grant you that, it's still useless to send you back for an appeal if the Fourth Amendment claim has no merit. So why does your Fourth Amendment claim have merit? Well, I don't want to concede the issue that that matters. But to answer your question, why does the Fourth Amendment claim have — why is there some validity to it? Because what we have here, under the facts of this case, I would concede that law enforcement had reasonable suspicion to effectuate a traffic stop. They had enough evidence. They had his criminal record. They had him engaging in perhaps innocent or perhaps suspicious activity. They had a right to stop the vehicle. The question then is they basically conduct a full custodial arrest at that time. But they have probable cause. But that's because once they stopped him and asked for his identification, they found out that he had — he was a felon who hadn't re-registered his address. But all that took time. And the question is how long was the traffic stop prolonged for them to learn this information? Because they learned the information after the constitutional violation was incurred. They can't use that information. And I would just submit that the U.S. Supreme Court has actually taken cert on a somewhat similar Fourth Amendment case in Rodriguez v. United States, which gets into the situation of how long can law enforcement prolong a traffic stop to get probable cause. So I read the suppression hearing transcript. I didn't see you making the argument that this took way too long as a stop. Where is that in the record? Well, the district court — I would submit that the state district court, I would concede, only analyzed the issue under the Fourth Amendment prong. The state district court said there was reasonable suspicion to do this traffic stop. So this is why the purposes of appeal is important. If you have this on appeal, then you would have the opportunity to argue, look, but that's not the end of it. You have to look at every constitutional violation. The traffic stop may have been legal, but the prolonged roadside detention was not. But was that argued in the Fourth Amendment? Yeah, he argued that, yes. In fact, he argued it in his fast-track appeal. That argued in the state court? Yes. Where? In his fast-track statement. Because, remember, he appealed this, and he wrote out the briefs. Right. Where in the — so you'd have to create the record in the trial court. Where in the trial court record were you focusing on how long this stop was? Well, I wasn't. You mean the state? Well, whoever was, whoever the counsel was. That — in the state — it comes up in the state evidentiary hearing, the facts that support it. And he argues that in his fast-track statement to the divestment court on appeal, which the divestment court did not decide. It just dismissed. But he made that argument that there wasn't probable cause for an arrest. Okay. Well, that's a different issue than how long. I mean, what do you mean there wasn't probable? We know there was probable cause to arrest. He didn't re-register. But now you're saying somehow it took them too long to figure that out. Right. Exactly. So where is the part about it took them too long? He says that in his fast-track, that they basically — it was a de facto arrest, that once they pulled him over, they arrested him and merandized him, and they just went right to probable cause to arrest. He does make that argument in the fast-track. Now, does he make it as precisely as I would like? I know, but it's fair to say that argument is in his fast-track response to the divestment court. I just have a question. Maybe you answered this, but I just want to make sure I understand. Why didn't you assert in your post-conviction proceeding the ineffective assistance claim? That's — you know, I did not do this Federal case at the State level. But I don't understand. I think even the better issue was, like, his plea is not knowing involuntarily because he — I mean, why wasn't that asserted? Well, we raised it. It's kind of complicated. The district court enters this order saying your Stone v. Powell issue is really four issues. And that's in the district court order, pages, like, 58 to 60, approximately. So your answer is — And so we filed a petition that mirrored that. We turned the one issue into four, but then we conceded that three of the subparts are invalid, and I don't know why we did that. So if the fact — so that really just leaves us with issue on the Fourth Amendment. Which gets back to my original point that — But it's the only issue in front of us, right? It's the only claim left. Okay. Thank you. Yes. I'm out of time, I see. Tom Gover from the Nevada Attorney General's office, representing the warden in this case. It sounds like we finally got a consensus that the only issue before the Court is a Fourth Amendment issue. I feel the district court did a very good job, actually, in trying to clarify what the issue was. When Mr. Raul was presented to the district court, he actually presented as a pro se petitioner, and it was the district court who treated him very fairly and didn't want to move on our motion, because we, at that point in time, with the pro se petition, said, hey, stone bar, procedural default, get rid of this. The district court said, hey, let's get appointed counsel on this one. This could be a Fourth Amendment claim, could be ineffective assistance of counsel, could be involuntary plea, denial of a direct appeal, all those various issues. And we've heard Mr. Carr talk about the representation of their office. They followed the court's lead, pled the four claims in a — in an amended petition. Our office moved to dismiss for lack of exhaustion, because those issues were not discussed in the Nevada State courts, and they conceded that — and essentially have waived those issues. So the only issue before us is the Fourth Amendment issue, which I believe is what motivated the Court's issue on the certificate of appealability, which is just focusing on Stone v. Powell or Toilette v. Henderson. And the certificate of appealability, the issue specifically is whether the district court properly determined that Federal habeas review of Appellant's Fourth Amendment claim is barred by Stone v. Powell or Toilette v. Henderson. So I'm not prepared to talk about 2254 error on the part of the Nevada Supreme Court on the merits or anything like that, but I can talk about a full and fair opportunity of Mr. Raul to litigate his claim in the State court. Kagan Your brief argued that the Fourth Amendment claim has no merit, so I'm a little bit confused about what you just said. You don't want to assert that here? We have asserted that. We filed an answer, and in our answer we asserted two defenses, Stone v. Powell and also procedural default.  The Court didn't address anything but the Stone v. Powell. And so I would, I mean, if we don't decide that this is Stone barred, I would think we would have to go back and have the Court consider our procedural default defense that has been asserted and not been dealt with. But why can't we just say, even assuming that this is not Stone barred, that there's no merit, and so this we can affirm, period? And I'm great with that, too. There does seem to be something, just on the appeal point, that is troublesome, where the judge says, you have a right to appeal, and then, bingo, guess what? You don't have a right to appeal. I mean, I realize Nevada has these unusual rules you've got to put in writing, you've got to get the prosecutor's consent, but it's like a bait and switch out of the Court. Let me address that in the concept of the full and fair opportunity to litigate the claim was raised. Counsel, Mr. Rowell's defense counsel, filed a motion to suppress. The day before jury trial was set, that's when they had the suppression hearing. And Sandra DiGiacomo, who's the defense, or the prosecutor in this case, brought in her metro officers, and they testified and created a record. And so as far as a full opportunity to create an evidentiary record, we have that. It's in the supplemental excerpts of record provided by us. But doesn't footnote 37 of Stone talk about a right to appeal as part of the full and fair opportunity? And he had a right to appeal. He had a right to appeal. But the judge told him he would get to have that right to appeal, and then it turned out the judge totally misled him. Right. So do we have any case that says when a judge tells you something blatantly false that you're going to be able to appeal and then you can't, that that counts as a full and fair opportunity? I would say that was the least of his full and fair opportunities. I mean, there were two other more opportunistic ways to get your appeal. The first would have been, and the normal way to do it, you lost your suppression hearing, right? You've created a record. It's incumbent on you to perfect your right to an appeal. Go to trial. This was a simple case. You go to trial. You lose. Your appeal right is perfected. You can go and challenge this. But we sort of have the same problem, right? So, yes, he could have done that, and maybe he would have done that if the judge hadn't said to him, well, hey, he pleaded guilty, and you can still appeal. Right. Especially when your main issue or the state's main issue appeared during the change of plea to be not the waiver of the appeal, but that the fact that he would get a lenient sentence, you didn't really, that wasn't the state's main opposition. Right. So. The opportunity appealed, I mean, there were so many things that were objectionable to Mr. Giacomo, you could tell. If you look at page, I believe it was page 169 of the transcript, where the court comes out and says, well, we were in chambers, and we just discussed how, you know, I'm going to treat this guy really lenient, and we're not going to do habitual criminal, and I'm going to run cases concurrent to one another. And then they also say about he's, she's going to have the right to be able to appeal. And state, what do you think? And I object. And so, I mean, right from the very beginning, there was an objection, which leads me to the second opportunity that Mr. Raul had to perfect his appeal. If he's not going to go to trial, he needs to comply with NRS 174.035, which specifically requires that with the consent of the court and the district attorney, a defendant may enter a conditional plea of guilty, guilty but mentally ill, or nolo contendere, reserving in writing the appeal, the right on appeal from the judgment to review of the adverse determination of any specified pretrial motion. That's the way to do it. The problem is that the government was objecting, like you just said, and yet the court is sitting there saying, you're going to get to appeal anyway. So how does that not mislead this guy? I think it is somewhat misleading. But you know what? He had the advice of counsel. And that, I think, brings in the Tollett side of your certificate of appealability, in that we, you know, in Tollett, we talk about and reaffirm the verity of plea proceedings, in that we assume that a person entering a plea with counsel is free and voluntary. But I also have, Judge McKeown highlighted some inconsistency here. There's another inconsistency here that's a little troubling, and that is during the change of plea, you are in State court, you argued that the plea should be vacated due to the court's, the trial court's improper role. You were? Yes. There was a writ of prohibition, I believe, that was filed. Yes. Right. Raising to the Nevada Supreme Court. Now, on direct appeal, on habeas review, you rely on Mr. Rouse's plea to argue that his appeal should be barred. It seems like that's inconsistent. I don't know if it's inconsistent. I would probably chalk that up to the timing of the two remedies. I mean, the writ of prohibition, the reason for that is an extraordinary writ, it was filed prior to the, prior to sentencing, and it was one of the efforts of the State to continue to object and continue to say this is not our deal. You had some minute entries and some references also to when sentencing finally came around, there was a sitting judge, Judge Sally Lohr, instead of Judge Gates, that came in and Senator Giacomo again would make the record this is, you know, not a deal with the State. I would, I would think it would be very unusual to a judge in the State of Nevada that we're going to sentence somebody and like, okay, what is the guilty plea agreement? What, there isn't one? I don't know what's going on. Let's get Judge Gates here. And so, you know, that writ of prohibition was trying to undo, I believe, what happened with Judge Gates. Let's go to trial. Let's do this stuff. That was the State's effort. Now, once we're dealing with the appeal and the man's already been sentenced, you know, they raised the issue. You're saying the court was improper. You were arguing before what the trial court did was improper. And now you're saying, though, well, never mind. No. I mean, as I stand here right now, I think Judge Gates was improper. But we don't have a claim in front of us of judicial misconduct. We don't have a claim in front of us of involuntary plea. We don't have a claim in front of us of ineffective assistance to counsel. Because Rao likes his plea. Doesn't the plea have to be unconditional? So for Toilette to apply, doesn't it have to be an unconditional plea? And this wasn't, in his view. He thought it was a conditional plea. In Toilette, I believe, I don't know if it applies to unconditional pleas or conditional pleas. I read Toilette mostly for the idea that pre-plea defects are waived once you enter a plea. I think our decision in Lopez-Armenta, though, talks about it being an unconditional plea. Okay. Well, and this clearly was a non-plea. I mean, this was a plea negotiated over the State's head with the judge. Now, in Powell, Stone v. Powell, we're looking at the opportunities. There were right ways to do this. I don't know. We haven't developed a record because we haven't had a claim of ineffective assistance to counsel. Maybe this is one of those situations where defense counsel has taken an outside shot that the Nevada Supreme Court will honor what this judge is doing. You know what? Let's get out of here while we've got this judge telling us he's going to give us concurrent time, not going to do habitual criminal. We've got a burden to hand. The most we can get is two to five here. You're not going to look at habitual criminal. Let's take our, you know, see if we can get our cake and our icing to get our low plea and also get a shot at trying to root. If you have a tollette, you have the Nevada State Court seems to try to answer the question that Judge Freeland posed, which is that you need an unconditional plea under tollette, but that the exception to the rule is this little Nevada statute. And I believe they cite State v. Webb. State v. Webb. State v. Webb is basically, you know, Nevada State's tollette argument or case law, where it — the rule is pre-plea debt defects are waived. You comply with 174.035, and we will see that as an exception. They found in this case the guy did not properly preserve his right to appeal under 174.035 and then denied. But that's the State equivalent, right? And here, when we're applying tollette on habeas, shouldn't we look at this question of whether it was an unconditional plea as a matter of Federal law? I think as a matter of Federal law, we should be looking at whether or not, especially in the Fourth Amendment context, whether or not the man had a full and fair opportunity to present his claim. And then — and this is why we raise the — our other defense. It's a State procedural default. And so — It may be, but maybe there's cause and prejudice here. I mean — Well, there may be cause and prejudice. And that's why I'm saying that if we went back on a remand, if you don't like Stone — the Stone bar here on this case, right, cause and prejudice hasn't been addressed. You know, those are issues that would be appropriate on remand. There could be cause and prejudice. But that record has never been developed, even — and I would point the finger at defense, because they didn't assert those claims in the State court. We didn't have a State petition where we're looking at defense counsel, what were you thinking when you and Judge Gates got together and sent me up the river on this deal? But we do have a ruling from the State court on the Fourth Amendment claim on the merits, right? So isn't the easiest thing to do here just to affirm on that basis, because there's nothing wrong with the ruling? I still think — We have a ruling from the State district court on the merits. Yes. And if that's easier, I'm all for it. All right. Okay. I submit. We'll give you two minutes on rebuttal. I wish you would address this Tollett issue, which seems like your arguments in Stone would do an end run around Tollett. So how do you get around Tollett or meet its requirements? The Tollett presupposes that the plea is entered into knowingly and voluntarily. You always have that challenge to any waiver of issues before the entry of plea if the entry of plea itself is invalid. And this comes back to the original argument that I made, that the Nevada Supreme Court's decision is contrary to federal law, because once they undid the benefit of his bargain and changed the terms of the plea agreement, that decision necessarily rendered his plea unknowing and involuntarily. And the Nevada Supreme Court never grappled with the disaster that it wrought when it made that decision, or with the implications of that decision. And so the Tollett doesn't apply here because the plea itself is invalid. The Nevada Supreme Court can't have it both ways. They can't deprive my client of the benefit, the clear benefit of his plea, but then hold that his plea of guilty is voluntary, just as you were stating earlier, that there's inconsistency in the State's position. On the one hand, you're arguing that the plea is invalid, but on the other hand, you're arguing the validity of the plea to foreclose my client's claims. There's one thing that I wanted to point out that's clear in the record. The law has never precluded alternative but inconsistent arguments. It's true, but it does cast some light on the validity of the argument when it's internally inconsistent. I would note that the District Court, a key part of this case, is the State did not object during the change of plea to the court offering my client a conditional plea. The State's objections, and there's a factual finding from the Federal District Court, the State's DA's objections were all about habitual offender treatment. And in fact, during the change of plea, at first the State makes a general objection about habitual. Judge, shouldn't you look at the records before you make a habitual offender decision? This is during the change of plea canvass. Then later, the judge says, you're waiving your right to appeal during the canvass of Mr. Rau. And Rau says, well, wait a minute, what about my Fourth Amendment issue? And the court says, oh, yeah, you get to appeal that. You're preserving that. The State does not object. And as far as ineffective assistance of counsel, what does Federal law tell us? Clearly established law that a defendant is entitled in court to take to the bank any oral pronouncements from the presiding judge. The law is clear on that. And as a defense attorney, you know that. And the law is also clear that that rule is especially valid when the State does not make an objection to what the court is telling the defendant. So in this case, the court activated my client's right to appeal. The State did not object. The law is clear that the State procedural requirements can't stand in the line of that. State kept making statements. Wait, what's going on? You know, Judge, I don't think you can proceed. I mean, we haven't agreed. I don't think you can proceed. I mean, they made a lot of general statements that they weren't endorsing. I wouldn't. During the change of plea canvass, which is the pivotal time, what they say later doesn't really matter as much. But during the change of plea, they made the objections, if you read them in the excerpt or in 5860 of the excerpt of the record, their objections all went, they made two objections. They were both to a habitual offender. They never said anything about habitual offenders. If it's a statutory provision requiring their assent, why isn't your client's claim really one of ineffective assistance of counsel? Because counsel at the time would have been, it would have been reasonable for him to say, Judge, you just activated his right to appeal by orally stating it on the record. And for sure in Federal court, you could have a waiver of appeal in a written plea agreement. You go to sentencing or any time in a change of plea. If the judge says, you get to appeal anyways, the rule is you get to appeal anyways. Because the Federal law is very strong that a defendant can take to the bank anything that he is told by the presiding judge in open court. And there's very good policy reasons for that. And the Nevada Supreme Court has never said anything to the contrary. What was your authority for that right now? There's a case called Buchanan. It's cited in my reply, refund, opening and briefs. Anglin is a case, en banc opinion, Anglin, A-N-G-L-I-N. Buchanan says that. They're both cited in both my opening and reply briefs. Thank you. Thank you. Thank you. Brough v. Palmer is now submitted. Thank you for coming from Nevada. We'll
judges: McKeown, Murguia, Friedland